# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEVE D. OWENS,
        Petitioner,

v.                                          Case No. 08C0049

BYRAN BARTOW,
        Respondent.

## DECISION AND ORDER

On January 14, 2008, petitioner Steve D. Owens filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of his right to an impartial jury and his right to present a defense. In 2002, petitioner was convicted in Door County Circuit Court of first-degree intentional homicide and sentenced to life in prison. He is currently in custody at the Wisconsin Resource Center.

## I. BACKGROUND

After a jury trial, petitioner was convicted of first-degree intentional homicide for the stabbing death of John Zelhofer. He received a life sentence with the possibility of extended supervision after twenty-four years. The evidence adduced at trial showed that petitioner stabbed Zelhofer with a samurai sword during the course of an argument that turned into a physical confrontation. Petitioner did not deny that he stabbed Zelhofer, but argued that he did so in self-defense.

In support of his self-defense theory, petitioner sought to introduce evidence showing that Zelhofer had a violent character. The trial court allowed seven witnesses

who testified about Zelhofer's reputation for violence and their opinion regarding his capacity for violent behavior.[1] Two of these witnesses and petitioner also testified about specific instances of Zelhofer's violent conduct. The testimony can be summarized as follows[2]:

- Trudy Cruz testified that Zelhofer had a reputation for being violent and that, in her opinion, Zelhofer was violent.

- Judith Anschutz testified that Zelhofer had a reputation for violence.

- Lori Anschutz testified that, in her opinion, Zelhofer was violent.

- Michael Woldt testified that, in his opinion, Zelhofer was violent. He also testified about a specific instance in which he observed bruises on Zelhofer's girlfriend's arms, which she said were inflicted by Zelhofer.

- Melissa Zoromski testified that, in her opinion, Zelhoder was violent.

- David Kroubetz testified that, in his opinion, if Zelhofer was drinking, he was violent.

- Gary Anschutz testified that Zelhofer had a reputation for being violent. He also testified about a specific instance in which he broke up a fight between Zelhofer and petitioner.

- Petitioner himself testified about two prior fights that he had with Zelhofer.

Petitioner states that he wanted to introduce additional testimony concerning Zelhofer's violent character, but that the trial court prohibited from doing so. He argues that the

---

[1]The trial court allowed two additional witnesses to testify concerning Zelhofer's character, but one witness's testimony was struck for reasons not revealed in the record, and the other testified that, in her opinion, Zelhofer was not violent.

[2]Specific citations to the trial testimony can be found in respondent's brief in opposition to the petition, at pages 29-32.

2

exclusion of this additional evidence deprived him of his Sixth Amendment right to present a defense.

After the jury found petitioner guilty and was excused, the bailiff discovered three sheets of paper in the jury room. The papers were apparently prepared on a word processor and contained information pertaining to the trial, including a factual time-line, an analysis of petitioner's self-defense theory, and definitions of "intentional" and "homicide." The trial court held a hearing at which it was determined that one of the jurors prepared these notes on his home computer, using a dictionary to define "intentional" and "homicide." Petitioner moved for a new trial based on the juror's use of extraneous information, but the trial court denied the motion, determining that the information was not prejudicial. In his habeas petition, petitioner argues that the juror's use of this extraneous information deprived him of due process and the right to an impartial jury.

## II. STANDARD OF REVIEW

A petition for a writ of habeas corpus under § 2254 raises the question of whether a state is holding the petitioner in custody unconstitutionally. Even if a petitioner's custody offends the Constitution, however, Congress has circumscribed the authority of federal courts to grant the writ. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may issue the writ only if the decision of the last state court to examine the merits of the petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an

3

unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

### III. DISCUSSION

**A.     Jury's Consideration of Extraneous Information**

Petitioner's first claim is that he was deprived of his due process right to trial by an impartial jury because one of the jurors brought extraneous information into the jury room. The right to a trial by jury in a criminal case includes the right to a jury verdict that is based on the evidence developed at trial – that is, evidence that comes "from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." Turner v. State of La., 379 U.S. 466, 472-73 (1965); see also Parker v. Gladden, 385 U.S. 363 (1966). This means that a jury's verdict cannot be influenced by extraneous information, such as newspapers, discussions with non-jurors, or dictionaries. However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Id. When a trial judge is confronted with a juror's use of extraneous information, the proper procedure is for the court to hold an evidentiary hearing at which the defendant is allowed an opportunity to explore whether the occurrence influenced the verdict. Id.; Remmer v. United States, 347 U.S. 227, 229-30

4

(1954); Arreola v. Choudry, 533 F.3d 601, 605 (7th Cir. 2008); Oswald v. Bertrand, 374 F.3d 475, 477-78 (7th Cir. 2004). If after such a hearing the trial court reasonably concludes that no prejudice occurred, the court need not order a new trial.

Petitioner raised his claim of juror misconduct in a post-conviction motion filed in the state trial court. The trial court held a full evidentiary hearing on the issue, at which the juror (Richard Durbin) gave testimony and was subject to cross-examination by petitioner's counsel. The trial court determined that misconduct occurred but that petitioner suffered no prejudice. The court denied petitioner's request for a new trial, and the state court of appeals affirmed. The state supreme court denied review. The state courts found the following facts, and because the findings are reasonable, I must accept them as true pursuant to 28 U.S.C. § 2254(d)(2).[3]

After the last day of testimony, Juror Durbin took his trial notes home and created three documents on his home computer. The first contained definitions of "homicide" and "intentional," as well as examples in which Durbin used the words in a sentence:

---

[3]As an initial matter, I note that the state courts discussed petitioner's claim under state law rather than pursuant to federal constitutional principles. However, the state and federal principles are identical for all practical purposes. Both require that a defendant be afforded a new trial if he shows that (1) extraneous information was improperly brought before the jury and (2) the extraneous information might have had a prejudicial effect on the verdict. Accordingly, the state court adjudicated petitioner's federal claim "on the merits," and I owe the state courts the deference required by § 2254(d). See Oswald, 374 F.3d at 477 (holding that if state standard is as demanding as federal standard, federal claim is deemed adjudicated on the merits even if state court discussed only state principles).

5

> THE MEANING OF "INTENTIONAL FIRST DEGREE HOMICIDE"
>
> HOMICIDE: murder, the crime of killing
>
> Owens <u>killed</u> Zelhofer
>
> INTENTIONAL: had in your mind to do, intended, thought about
>
> Owens <u>intended to kill</u> Zelhofer
>
> FIRST DEGREE:

(Answer Ex. B at Ex. 2 (bold-face type removed).) Durbin testified that he obtained the definitions from a dictionary, and that he left "first degree" blank because he found no satisfactory definition. He further testified that he composed the two sentences only to provide some context for the definitions, not to record his view of the evidence. Durbin also testified that he prepared this piece of paper the night before the trial court instructed the jury on the law, including instructions on the elements of first-degree intentional homicide and the definition of "intent." He testified that he disregarded his own definitions after receiving the trial court's instructions, which were much more detailed than his own definitions. The trial court found that Durbin did not share his definitions with other jurors.

In the second document, entitled "WAS IT SELF DEFENSE?", Durbin organized the facts presented at trial into "yes" and "no" categories and included a list of questions. (Answer Ex. B at Ex. 3.) The third document consisted of a time-line and more questions

6

that Durbin compiled based on the evidence presented at trial. (Answer Ex. C at Ex. 4.) The trial court found that Durbin did not use extraneous information when preparing the second and third documents. Rather, Durbin prepared the documents based on his memory of the evidence and his trial notebook.[4] Durbin brought the documents into the jury room, but he did not show them to other jurors.

In affirming the trial court's refusal to grant petitioner a new trial, the court of appeals reasoned as follows:

> We agree with the State that [the time-line and the self-defense analysis] did not constitute "extraneous information" because they were generated from the juror's own observations during the trial. The dictionary definitions . . . were extraneous because they came from a non-evidentiary source. However, there is no reasonable probability that the definitions would have a prejudicial effect on a hypothetical juror because they were general in nature and not inconsistent with the actual jury instructions given.

(Answer Ex. E at 2.) I cannot say that this determination was contrary to or involved an unreasonable application of clearly established Supreme Court case law. First, the time-line and self-defense analysis contained no extraneous information and were nothing more than Durbin's own views of the evidence, which he was free to share with the other jurors. Thus, those documents did not deprive petitioner of a jury verdict based solely upon the evidence developed at trial.

Second, although the dictionary definitions were extraneous, the state court reasonably concluded (after a full evidentiary hearing) that they posed no reasonable threat of prejudice because Durbin did not share them with other jurors, they were

---

[4]The trial court permitted note-taking, but jurors were not supposed to take their notebooks home.

7

superceded by the trial court's instructions, and they were extremely general and not inconsistent with the jury instructions. Federal courts have found no prejudice in similar circumstances. See, e.g., Fields v. Brown, 503 F.3d 755 (9th Cir. 2007) (en banc) (concluding that jurors' consideration of dictionary definitions was not prejudicial); United States v. Morales, 108 F.3d 1213, (10th Cir. 1997) (stating that although jurors' consideration of dictionary definition raises a presumption of prejudice, such consideration will be found harmless beyond a reasonable doubt where there is no evidence that the jurors attached any significance to the definition); United States v. Williams-Davis, 90 F.3d 490, 502-03 (D.C. Cir. 1996) (collecting cases discussing juror's use of dictionary and concluding that such use was not prejudicial under facts of case). Likewise, I can detect no prejudice here, and therefore the state court's decision cannot be disturbed.

**B.    Right to Present a Defense**

Petitioner's second claim is that the trial court infringed his Sixth Amendment right to present a defense when it excluded evidence concerning specific instances of Zelhofer's past violent acts. He argues that this evidence was crucial to his claim that he stabbed Zelhofer in self-defense.

Because petitioner did not raise this Sixth Amendment claim during his direct appeal, the Wisconsin Court of Appeals addressed it for the first time when it reviewed the trial court's denial of petitioner's state habeas petition. Although the state public defender appointed counsel to represent petitioner during this appeal, his appointed lawyer determined that the habeas petition lacked merit and, for that reason, moved to

withdraw. The court of appeals directed counsel to file a no-merit report, to which petitioner filed a pro se response. The court of appeals's ruling thus discusses whether the state habeas petition had arguable merit. It concluded that it did not and affirmed the trial court's dismissal of the petition, reasoning as follows:

> The no-merit report addresses whether there is arguable merit to a claim that the trial court erroneously exercised its discretion by failing to allow specific evidence of Zelhofer's prior violent acts. When self-defense is raised in a prosecution for homicide or assault, and there is a factual basis to support such a defense, a defendant may establish what he or she believed to be the violent character of the victim by proving prior specific instances of violent conduct by the victim within the defendant's knowledge at the time of the incident. State v. Boykins, 119 Wis. 2d 272, 277 (Ct. App. 1984). The admission of such evidence, however, lies within the trial court's sound discretion.
>
> Here, trial counsel informed the court that she intended to introduce evidence of Zelhofer's reputation for violence as well as specific acts of violent conduct known to Owens. During a pre-trial motion hearing, trial counsel notified the court that she wished to introduce between five and ten incidents, that number subject to change pending further investigation. The court, concerned that additional investigation might taint Owens' memory, noted that it wanted a showing of those incidents Owens was actually aware of at the time of the stabbing. Ultimately, at trial, the court allowed seven witnesses to testify regarding Zelhofer's reputation for violence, and three witnesses additionally testified regarding specific violent acts. Owens also testified in his own defense regarding two instances of violent conduct he had with Zelhofer.
>
> Trial counsel made no offer of proof as to any testimony regarding either reputation or specific instances that the court had barred. Even if she had, the circuit court acknowledged it would have been within its discretion to bar any further testimony as needlessly cumulative under Wis. Stat. § 904.03. Owens was allowed to introduce ample evidence that he believed the victim was violent, by proof of both reputation and prior acts of violence within his knowledge. . . . Owens has likewise failed to establish that the trial court improperly excluded any additional testimony regarding Zelhofer's specific violent acts.

(Answer Ex. L, at 3-4.)

As the state court's reasoning indicates, it is not clear that the trial court excluded any evidence concerning Zelhofer's character for violence. Petitioner has not pointed to any place in the trial transcripts where the court ruled that it would not allow him to present character evidence. Even assuming that the trial court made such a ruling, petitioner's trial counsel never made an offer of proof as to the contents of any excluded testimony, and petitioner does not explain what that testimony might have been. Because of this gap in the record, I have no way of knowing what, if any, evidence was excluded. However, because the court of appeals appears to have concluded that the trial court excluded some testimony concerning specific instances of Zelhofer's violent conduct, I will likewise assume that the trial court excluded some such testimony.

I also note that the court of appeals decided petitioner's claim pursuant to state-law evidentiary principles (i.e., Boykins and Wis. Stat. § 904.03), not Chambers v. Mississippi or other federal cases dealing with the right to present a defense, and therefore it is possible that the state court failed to rule on the merits of petitioner's Sixth Amendment claim. However, Boykins itself recognizes that the exclusion of character evidence supporting a self-defense theory implicates the Sixth Amendment right to present a defense. Boykins, 119 Wis. 2d at 279. And in general, a state court's application of a constitutional state-law evidentiary principle will be upheld as long as it was reasonable. Edmunds v. Deppisch, 313 F.3d 997, 999 (7th Cir. 2002). Further, petitioner does not argue that the state-law principles are any less demanding than the federal principles. Accordingly, as with petitioner's juror misconduct claim, I may not grant relief on petitioner's Sixth Amendment claim unless the standard of § 2254(d) has been satisfied. Oswald, 374 F.3d at 477.

10

Turning to the merits of petitioner's claim, I find that the state court's decision was reasonable. The Seventh Circuit has summarized the legal standards governing the right to present a defense as follows:

> The Sixth Amendment, as interpreted by the Supreme Court, guarantees a criminal defendant the right to present a defense. See Chambers v. Mississippi, 410 U.S. 284, 302 (1973). "[A]t a minimum, . . . criminal defendants have the right . . . to put before a jury evidence that might influence the determination of guilt." Taylor v. Illinois, 484 U.S. 400, 408 (1988) (quotation marks omitted). The Supreme Court has held unconstitutional the rigid application of state evidentiary rules when such an application infringes upon the right to present witnesses in one's own defense, particularly when that testimony is critical to the defense's theory of the case. Chambers, 410 U.S. at 302-03 (holding that "the [rules of evidence] may not be applied mechanistically to defeat the ends of justice").
>
> This right, however, is not unlimited and may "bow to accommodate other legitimate interests in the criminal trial process." Id. at 295. The state is permitted to impose reasonable restrictions on the presentation of a defense, including state and federal rules "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Id. at 302; see also United States v. Lea, 249 F.3d 632, 642 (7th Cir.2001) (state courts have "broad latitude to fashion rules which operate to exclude evidence from criminal trials"). Such rules do not abridge an accused's right to present a defense so long as they are not "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Rock v. Arkansas, 483 U.S. 44, 56 (1987) (citations omitted). The Supreme Court has held "the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998).

Horton v. Litscher, 427 F.3d 498, 504-05 (7th Cir. 2005) (alterations in original). In short, although petitioner had a right to present his self-defense theory and evidence supporting it, the state court was entitled to impose restrictions on the presentation of that evidence, so long as the restrictions were not arbitrary or disproportionate to the purposes they were designed to serve.

11

At trial, the state court (apparently) excluded some, but not all, testimony concerning Zelhofer's violent character pursuant to Wis. Stat. § 904.03, on the ground that it was cumulative to the opinion, reputation and specific-instances testimony that the trial court had permitted. The Seventh Circuit has held that § 904.03 is not, in itself, arbitrary or disproportionate to its purpose. Johnson v. Bett, 349 F.3d 1030, 1036 (7th Cir. 2003). Thus, the only question is whether the application of § 904.03 to petitioner's case was unreasonable. Because the trial court allowed petitioner to present ample evidence in support of his contention that Zelhofer was a violent man – including seven witnesses who testified about Zelhofer's violent character (two of whom testified about specific instances of Zelhofer's violent conduct), as well as petitioner himself (who testified about two instances of Zelhofer's violent conduct) – the court's decision to exclude additional, cumulative evidence concerning specific violent acts was undoubtedly reasonable. Cf. Horton, 427 F.3d at 506 (concluding that Wisconsin court did not unreasonably apply Sixth Amendment, right-to-present-a-defense principles when it excluded evidence relevant to petitioner's defense where such evidence was cumulative to other evidence that made the same point). Therefore, petitioner was not deprived of his Sixth Amendment right to present a defense.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that this petition for a writ of habeas corpus is **DENIED**. The clerk of court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 23 day of October, 2008.

/s_____
LYNN ADELMAN
District Judge